UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS R. BEASLEY, ) | |
| ) | No. CV-09-0277-CI |
| Plaintiff, ) | |
| ) | ORDER DENYING PLAINTIFF'S |
| v. ) | MOTION FOR SUMMARY JUDGMENT |
| ) | AND GRANTING DEFENDANT'S |
| MICHAEL J. ASTRUE, Commissioner ) | MOTION FOR SUMMARY JUDGMENT |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 16.)  Attorney Maureen J. Rosette represents Thomas R. Beasley (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.)  After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on December 29, 2006. (Tr. 109.)  He alleged disability due to vision problems, anxiety

and a nerve disorder with an amended onset date of December 1, 2005. (Tr. 32-33, 143.) Benefits were denied initially and on reconsideration. Plaintiff timely requested a hearing before an administrative law judge (ALJ), which was held before ALJ Paul Gaughen on March 26, 2009. (Tr. 30-50.) Plaintiff, who was represented by counsel, and vocational expert Sharon Welter (VE) testified. The ALJ denied benefits on April 24, 2009, and the Appeals Council denied review. (Tr. 1-4, 12-29.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in him previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 54 years old. (Tr. 38.) He had a high school education and two years of college, during which he earned an Associate degree in Culinary Arts. (Tr. 34.) Plaintiff was single with no children. He testified he was living in a house with

several house mates at the time of the hearing.  He did household chores and some cooking for the other residents. (Tr. 40.) Plaintiff had a significant work history as a chef's helper for 20 years. (Tr. 144.)  He testified he quit his job as a chef's helper because he developed blurred vision and was diagnosed with severe cataracts and a detached retina. (Tr. 35.)  He reported having several surgeries to correct the vision problems, but his eyes still drifted and he had blurred vision that gave him headaches, affected his balance and concentration, and caused him anxiety. (Tr. 35-37.)

## ADMINISTRATIVE DECISION

At step one, ALJ Gaughen found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 17.)  At step two, he found Plaintiff had severe impairments of "severe visual impairments; anxiety disorder, not otherwise specified (NO); and personality disorder, NOS with avoidant and paranoid features." *Id*.  At step three, he found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings).  (Tr. 19.)  The ALJ summarized Plaintiff's self-report, made findings, and concluded Plaintiff's statements were not credible. (Tr. 20-22.)  At step four, he determined Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with several nonexertional limitations. (Tr. 20.)  The specific nonexertional limitations identified were:

> He is not able to accomplish work tasks requiring precise or unimpaired vision.  He should avoid balancing tasks; fine manipulating; work in unprotected places; driving at night or in dark places; and sophisticated social

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

> interaction or collaborative work with new and unfamiliar people. He would have delays in new detailed tasks/delays in working memory but has retained all of his previous detailed learning. He is capable of learning simple routine tasks.

(Tr. 20.)

Based on the RFC and VE testimony, the ALJ concluded Plaintiff could no longer perform his past relevant work. (Tr. 24.) The ALJ proceeded to step five, took additional VE testimony, and found Plaintiff's RFC enabled him to perform other occupations that existed in significant numbers in the national economy, such as cleaner/housekeeping, laundry sorter, and bakery assembly line worker. (Tr. 25, 40-46.) The ALJ concluded Plaintiff had not been disabled, as defined by the Social Security Act, from the alleged onset date through the date of his decision and was, therefore, ineligible for benefits. (Tr. 25.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he (1) found Plaintiff's statements were not credible, and (2) improperly rejected the opinions of examining psychologist Scott Mabee, Ph.D., and his associates who examined Plaintiff in 2007, 2008, and 2009. (Ct. Rec. 14.)

**DISCUSSION**

**A.  Credibility**

When the ALJ finds a claimant's statements as to the severity of impairments, pain, and functional limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did

not arbitrarily discredit claimant's allegations.  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  Nonetheless, an adjudicator cannot be required to believe every allegation of disabling symptoms, even when medical evidence exists that a claimant's condition may produce the alleged symptoms.  "Many medical conditions produce pain not severe enough to preclude gainful employment."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Although an adjudicator may not reject a claimant's extreme symptom complaints solely on a lack of objective medical evidence, medical evidence is a relevant factor to consider.  *Social Security Ruling* (*SSR*) 96-7p.

If there is no affirmative evidence that a claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's symptom testimony.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, could reasonably be expected to cause "some degree of the symptom."  *Lingenfelter*, 504 F.3d at 1036.  Once the first test is met, the ALJ must evaluate the credibility of the claimant and make specific findings supported by "clear and convincing" reasons.  *Id.*

In addition to ordinary techniques of credibility evaluation,

the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness; inconsistencies either in his allegations of limitations or between his statements and conduct; daily activities and work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair*, 885 F.2d at 597 n.5. The ALJ may also consider an unexplained failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). As explained by the Commissioner in his policy ruling, the ALJ need not totally reject a claimant's statements; he or she may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *SSR* 96-7p. The ALJ may find a claimant's abilities are affected by the symptoms alleged, but "find only partially credible the individual's statements as to the extent of the functional limitations." *Id*.

Although credibility determinations are the province of the ALJ, and "the court may not engage in second-guessing," *Thomas*, 278 F.3d at 959, courts have imposed on the Commissioner a requirement of specificity. *Connett v. Barnhart,* 340 F.3d 871, 873 (9th Cir. 2003); *Dodrill v. Shalala,* 12 F.3d 915, 917 (9th Cir. 1993).

Here, the record contains no affirmative evidence of malingering. In the Commissioner's credibility findings, the ALJ found Plaintiff's medically determinable impairments could be expected reasonably to produce symptoms alleged by Plaintiff. (Tr.

21.) He specifically noted Plaintiff's self-reported activities of daily living, which included sharing household chores with his house mates, shopping, running errands with a house mate, doing odd jobs, yard work and basic cooking at the house, cleaning the kitchen, taking care of pets and watching television until his vision starts to fail. (Tr. 20-22.) The ALJ also noted Plaintiff's allegations of memory and concentration problems, problems with balance, nausea, headaches every three to four hours, and anxiety. (Tr. 22.) ALJ Gaughen then specified several reasons for finding Plaintiff's statements regarding the degree of intensity and limitation caused by his impairments not credible. He first found the medical evidence did not support a finding of total disability due to vision problems, referencing evidence from treating physician Stephen Maher, M.D., in 2007, and from the Spokane Eye Clinic in 2008, that indicates Plaintiff vision was impaired after surgery, but improved to 20/50 in the right eye and 20/30 in the left eye with glasses. (Tr. 21, 298, 319.)

While a lack of supporting medical evidence alone is not a reason to reject a claimant's credibility, the ALJ gave other "clear and convincing" reasons for rejecting Plaintiff's complaints of disabling symptoms. First, he noted Plaintiff made infrequent visits to his doctor for eye problems, and did not report headaches or nausea to his physicians during follow-up visits, thus discrediting allegations of disabling, ongoing symptoms. He also noted Plaintiff described numerous daily activities such as cleaning the kitchen, preparing meals, doing dishes and house cleaning, working in the yard, caring for pets and running errands with a

house mate, which the ALJ reasonably found were inconsistent with a finding of total disability due to vision problems and/or mental problems. (Tr. 22.) *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). In addition, the ALJ specifically addressed Plaintiff's claims of disabling mental problems, finding his assertions unreliable because Plaintiff did not seek mental health counseling or medication for his alleged severe symptoms of anxiety, concentration, and depression despite repeated recommendations from examining psychologists. (Tr. 22.) The ALJ reasoned the failure to seek help suggested the claimed symptoms were not so disabling as represented. These are "clear and convincing" reasons supported by the record.[1] *Fair*, 885 F.2d at 604.

The record shows that in 2007, Plaintiff described daily

---

[1] Although the Ninth Circuit has cautioned against chastising a claimant who suffers from depression for "'the exercise of poor judgment in seeking rehabilitation,'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)(*quoting Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)), Plaintiff was advised consistently to seek treatment for his reported anxiety symptoms. (Tr. 252, 311.) Unlike the claimant in *Nguyen*, Plaintiff was aware of the diagnosed mental illness as early as 2007, but did not follow Dr. Mabee's recommendations for treatment in 2007 or 2008. It is noted on review that Plaintiff offers no explanation for his failure to follow through. *SSR* 96-7p (in assessing credibility, where records show lack of treatment for alleged impairment, adjudicator must consider claimant's explanation for failure to seek treatment). (*See* Tr. 37-38.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

activities that are transferrable to the work place, and social activities and relationships with house mates and family that are inconsistent with his claims of social isolation due to anxiety. (Tr. 249-58.)  Further, as found by the ALJ, there is no evidence Plaintiff complained of anxiety symptoms to providers prior to the 2007 psychological evaluation, at which time individual counseling and medication were suggested by Dr. Mabee.  (Tr. 252.)  In the 2008 psychological evaluation, Plaintiff reported helping his house mate with paperwork and doing odd jobs around the house, watching television, and driving.  He also reported continued anxiety symptoms and problems with concentration; again, the evaluator recommended individual therapy and consultation with a physician for medication.  (Tr. 311.)  There is no evidence Plaintiff followed through with these recommendations to relieve his symptoms.[2]

The ALJ did not err in discounting Plaintiff's complaints.  The record shows Plaintiff made no effort to seek relief, despite repeated recommendations.  Rather, he consistently reported an ability take care of his personal needs, interact with family and house mates, assist a house mate with his business, and contribute to the management of his household.

The ALJ also enumerated various inconsistencies between Plaintiff's allegations and Dr. Mabee's narrative reports and

---

[2] It is noted on review that in 2009, that Plaintiff was not involved in counseling or treatment with medication for his symptoms. (Tr. 327.)  The 2009 mental health examiners repeated their recommendation of individual therapy and medication to control anxiety symptoms.  (Tr. 328-29.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

testing results. (Tr. 22.) Specifically, he noted that normal attention and concentration were observed by the evaluators, cognitive testing showed "minimal sufficient effort," the possibility of "mild exaggeration of complaints and problems," and test scores measuring depression and anxiety were drastically inconsistent from year to year. (Tr. 22, 251, 314.) These are permissible reasons to support an adverse credibility finding. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). The ALJ's credibility determination is a reasonable interpretation of the evidence, is supported by specific, "clear and convincing" reasons, and, therefore, will not be disturbed.

**B.   Dr. Mabee's Psychological Evaluations, 2007 and 2008**

In these proceedings, the ALJ evaluates the medical evidence submitted and must explain the weight given to the opinions of accepted medical sources. 20 C.F.R. §§ 404.1527, 416.927. As a licensed psychologist, Dr. Mabee is an acceptable medical source. The record includes three psychological evaluations conducted by Dr. Mabee and assessment specialists. The examinations include an interview, mental status exam, and various objective psychological tests, and summary. (Tr. 307-332.)

In evaluating medical opinions, the ALJ must provide "clear and convincing" reasons for rejecting uncontradicted opinions of a treating or examining physician and "specific" and "legitimate" reasons for rejecting contradicted opinions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Andrews,* 53 F.3d at 1043.

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the

alleged period of disability, and the lack of medical support for doctors' findings based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding an examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604. Medical opinions based on a claimant's subjective complaints may be rejected where the claimant's credibility has been properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Rejection of an examining medical source opinion is specific and legitimate where the medical source's opinion is not supported by his or her own medical records and/or objective data. *Tommasetti*, 533 F.3d at 1041.

Plaintiff contends the ALJ erroneously rejected mental functional limitations noted on Dr. Mabee's psychological evaluation form reports that accompany narrative evaluations completed in 2007, 2008, and 2009.[3] (Ct. Rec. 14 at 13-15.) On the 2007 summary form,

---

[3] The May 2009 psychological evaluation was obtained after the ALJ's denial of benefits; it was submitted to the Appeals Council on June 2, 2009. (Tr. 321.) Because the post-decision evidence was considered by the Appeals Council, it is part of the record on review by this court. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). Because the new evidence relates to a period after the ALJ's decision, it is not material to the period at issue. *See* 20 C.F.R. § 404.970; *Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990), *overruled on other grounds*, *Bunnell v. Sullivan*, 947 F.2d 341, 342

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

the evaluator assessed three moderate limitations in cognitive factors and marked limitations in all social factors, *i.e.,* ability to perform routine tasks, relate appropriately to co-workers and supervisors; interact appropriately in public contacts; respond appropriately to the pressures and expectations of a normal work setting; care for self; control physical or motor movements; and maintain appropriate behavior. (Tr. 256.)  These limitations were expected to last 12 to 18 months.  (Tr. 257.)  In 2008, the evaluator assessed mild to moderate limitations in cognitive factors and social factors, and one marked limitation in Plaintiff's ability to respond appropriately to the pressures of a normal work setting. (Tr. 310).  Medication and therapy were recommended and limitations were expected to last six to twelve months.  (Tr. 311.)  In 2009, the evaluator assessed two moderate limitations in cognitive factors and marked limitations in all social factors listed above, with a duration expectation of 15 to 18 months.  (Tr. 324-25.)

As stated by the examiner in 2007, "our impressions are dependent upon information provided by Mr. Beasley," as well as the test results.  (Tr. 252.)  It appears the examiner relied on Plaintiff's self-report to a large degree in the 2008 evaluation

---

(9th Cir. 1991).  Further, the reasons given by the ALJ for discounting the findings noted on the 2007 and 2008 check box forms apply reasonably to the 2009 findings.  It is unlikely consideration of the new evidence will change the outcome of these proceedings; therefore remand for consideration by the ALJ is not warranted. *Mayes v. Massanari*, 276 F.3d 453, 462 (2001); *Booz v. Secretary of Health and Human Serv.*, 734 F.2d 1378, 1381 (9th Cir. 1984).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

also. (*See* Tr. 315.) The ALJ specifically discounted functional limitations assessed in the 2007 and 2008 checkbox forms, according those findings little weight because they were based on unreliable self-report in a secondary gain context and because the basis for the conclusions was unexplained. (Tr. 23.) These are specific and legitimate reasons to disregard the unexplained check box form findings. *Tonapetyan*, 242 F.3d at 1149; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

The ALJ also noted the definitions of "marked" and "severe" limitations used by the state agency are different from the Social Security definitions and, therefore, were not entitled to controlling weight. (Tr. 23.) While the purpose for which medical opinions are obtained generally cannot be used to reject an acceptable medical source opinion, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (*per curiam*), ALJ Gaughen legitimately declined to give these check box findings "controlling weight" because of the variance in agency definitions. *See SSR* 96-5p (medical source statements are not given controlling weight on issues reserved to the Commissioner).

Regarding the opinions expressed in Dr. Mabee's narrative reports, the Ninth Circuit has held an adjudicator is not required to recite specific words in discounting medical opinions. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). On review, the court can read the ALJ's summary of the evidence and draw inferences, if they are there to be drawn. *Id*. Here, ALJ Gaughen gave a detailed summary of the psychological evaluations in the record before him, noting 2007 findings of average range of general

and immediate memory, severe level of anxiety, mild level of depression, low average working memory, a tendency to avoid interaction with people other than his friends, problems with focus concentration, and a limited ability to follow simple directions. (Tr. 18, 252-53.) Summarizing the 2008 evaluation, the ALJ noted the examiner's findings that Plaintiff tested at a mild level of anxiety and a severe level of depression, exactly the opposite of the 2007 evaluation. (Tr. 18, 22, 251, 314.) As found by Dr. Mabee and noted by the ALJ, Plaintiff would be able to understand and follow simple, verbal and written instructions and have average to below average pace of performance and persistence that would decrease disproportionally as the task increased in demand. The ALJ also noted the examiner's finding that Plaintiff exhibited below average to poor ability to reason and use appropriate judgment in most aspects of his life and would have moderate difficulties functioning in a typical work environment. (Tr. 18-19, 315-16.)

As discussed above, in credibility findings, the ALJ referenced inconsistencies between the examiners' findings and Plaintiff's self-report of daily activities, as well as first hand observations by the examiner that Plaintiff was polite and cooperative and test results showing minimal sufficient effort and mild exaggeration of complaints. (Tr. 22, 251, 314.) Also referenced by the ALJ was a 2007 third party statement that Plaintiff spent time being the third party's helper and the rest of the day looking for work. (Tr. 22, 23.) The ALJ referenced Plaintiff's unexplained failure to seek individual counseling and/or for medication to control anxiety (as recommended in both evaluations) and found this was an indication

that the symptoms were not as severe as alleged. (Tr. 22.) *SSR* 96-7p. The court can reasonably infer from these findings that the ALJ accepted the nature of limitations assessed by Dr. Mabee and associates but discounted the severity indicated based on Plaintiff's unreliable self-report and inconsistent test results. This inference is supported by the record and by the ALJ's final RFC determination.

For example, the ALJ's RFC findings reflect the limitations identified in both of Dr. Mabee's reports and reported by Plaintiff, *i.e.,* due to anxiety symptoms, he should avoid sophisticated social interaction or collaborate work with new and unfamiliar people; due to problems with concentration and memory, he would have delays in new detailed tasks and in working memory but he was capable of learning simple routine tasks. (Tr. 20.) Considering *de novo* the entire record and the ALJ's detailed summary of the evidence, it cannot be said the ALJ's final RFC determination is unreasonable. Although Plaintiff argues he is more limited psychologically than found by the ALJ, the record in its entirety indicates substantial evidence supports the ALJ's evaluation of Dr. Mabee's opinions and the weight given to narrative opinions. Where, as here, substantial evidence supports the administrative findings, under the case law the Commissioner's determination is conclusive. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is **GRANTED.**

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

1   The District Court Executive is directed to file this Order and
2   provide a copy to counsel for Plaintiff and Defendant. Judgment
3   shall be entered for **Defendant**, and the file shall be **CLOSED**.
4   DATED November 15, 2010.

                            S/ CYNTHIA IMBROGNO
                     UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18